IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN MAYER,** | : | **CIVIL ACTION** |
| *Plaintiff-Relator*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ADCS CLINICS, LLC,** *et al.*, | : | |
| *Defendants*. | : | **NO. 21-cv-5303** |

**MEMORANDUM**

**KENNEY, J.**                                                                                                 **OCTOBER 4, 2024**

The Court writes for the benefit of counsel and the parties. The Healthcare Defendants move to dismiss Plaintiff-Relator's Amended Complaint for failure to state a claim under Federal Rules of Civil Procedure 9(b) and 12(b)(6). ECF No. 96. As stated in the accompanying order, this motion to dismiss is denied with respect to Count I (False Claims Act) and Counts V-XII (eight qui tam claims brought under state FCA equivalents), and granted with respect to Count IV.[1]

In the Amended Complaint, Plaintiff-Relator Dr. Jonathan Mayer, a dermatologist formerly employed by Healthcare Defendant Advanced Dermatology of Colorado, PC, identifies three specific ADCS practices that give rise to his allegations of fraud: (1) requiring providers to upcode new patient visits and bill for higher amounts; (2) requiring providers to conduct and bill for medically unnecessary total body skin exams; and (3) billing for self-referred

---

[1] As a reminder, Counts II and III were previously severed and dismissed from this action. *See* ECF No. 112.

Count IV — Violations of Stark Law — is dismissed as a standalone claim because the Stark Act "gives no one a right to sue" and the Stark Act "never appears in court alone. Instead, it always come[s] in through another statute that creates a cause of action—typically, the False Claims Act." *United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 169 (3d Cir. 2019) (citation omitted). Here, then, Counts I and V-XII will subsume the alleged Stark Act violations.

dermatopathology designated health services in violation of the Stark Act. ECF No. 52 ¶ 54. These practices and their related allegations will be addressed in turn.

First, the Healthcare Defendants move to dismiss Relator's claim that ADCS requires providers to upcode new patient visits because this claim falls short of Rule 9(b)'s heightened pleading standard, which applies to claims of fraud under the False Claims Act. *See United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) ("Rule 9(b)'s particularity requirement requires a plaintiff to allege all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." (citing *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016))). The Healthcare Defendants assert that Relator identifies the "who" by "lumping together numerous defendants" and relying on "generic and vague group allegations." ECF No. 96 at 10-12. The Healthcare Defendants further assert that Relator fails to sufficiently describe the "what" and "how" elements of the purported scheme, e.g., the specific language of each code; how the codes applied to various services; what procedures were in fact performed; or whether any claims were actually submitted. *Id.* at 12-13.

The Court finds that Relator's allegations on upcoding, taken as true, serve as a sufficient preview of Relator's litigation of this claim. For example, Relator alleges that ADCS's Medical Executive Committee sent a company-wide email instructing all ADCS providers to cease using a certain billing code (99201) reserved for new patient visits during which providers "conducted a problem-focused exam[] and used straightforward medical decision making." ECF No. 52 ¶¶ 76, 82. Relator alleges that the elimination of this code resulted in providers billing at a higher code (99202)—one reserved for exams that involve six or more body areas or organ systems—even if a more comprehensive exam was not medically indicated. *Id.* ¶¶ 78, 85. ADCS then allegedly

submitted these upcoded (false) claims to the government. *Id.* ¶ 86. Relator alleges "zealous efforts by all levels of ADCS leadership" to eliminate the 99201 code and alleges that he observed in patients' electronic medical records that providers were upcoding to the higher code—99202—even when the 99201 should have been used. *Id.* ¶¶ 83-85. These allegations provide a sufficient factual framework to withstand the Healthcare Defendants' Motion to Dismiss.

Second, the Healthcare Defendants assert that Relator offers no particularities as to the alleged scheme to conduct and bill for total body skin exams. The Healthcare Defendants assert, for instance, that Relator has failed to show that none of these more comprehensive exams were medically necessary, ECF No. 96 at 14-16, and that Relator pleads vaguely that he "saw many examples of medically unnecessary [total body skin exams] increasing the code billed to Medicare," *id.*, citing ECF No. 52 ¶ 111.

As with the first practice, the Court finds that Relator's allegations of medically unnecessary total body skin exams are stated with sufficient particularity to survive the Healthcare Defendants' Motion to Dismiss. That is, Relator sufficiently alleges that ADCS implemented an official policy requiring all providers to perform total body skin exams on all new patients, regardless of whether such exams were medically indicated, and at least annually thereafter. ECF No. 52 ¶ 100. For example, Relator alleges that a provider would be required to perform a total body skin exam on a 14-year-old patient who presented only with acne or a 98-year-old who presented only with dry hands. *Id.* ¶ 103. Relator alleges that the "unrestricted use of total body skin exams often led to upcoding and higher visits for such payments," *id.* ¶ 104, and that he saw many examples of medically unnecessary total body skin exams "[i]n his review of the prior visit notes and the submitted claim forms," *id.* ¶ 111. Relator's claim on this practice, then, withstands the Motion to Dismiss.

Third, as with the two other practices, the Healthcare Defendants seek to dismiss the Stark Law claim because the allegations lack particularity under Rule 9(b). The Healthcare Defendants contend that Relator fails to adequately allege: 1) which referrals or health services are at issue; 2) the fraudulent nature of the alleged direct financial relationship between a "handful of [ACDS] physicians" and ACDS dermatopathologists; 3) how a physician's compensation varied according to referral rate; 4) where, i.e., in what state, the fraudulent activity occurred; and 5) whether any false claims were actually submitted to the government. ECF No. 96 at 16-20.

In order for Relator's Stark Act claim to go forward, Relator must establish a prima facie violation of the Stark Act by showing that there is: 1) "a referral for designated health services"; 2) "a compensation arrangement"; and 3) "a Medicare claim for the referred services." *See Bookwalter*, 946 F.3d at 169 (citation omitted). Here, Relator sufficiently satisfies these elements for purposes of a motion to dismiss. Relator first alleges that ACDS dermatologists are referring health services to ADCS dermatopathologists and that this "self-referral" is improper under the Stark Act because the two groups of doctors have a direct financial relationship as ADCS employees. ECF No. 52 ¶¶ 120-26; *see also* 42 U.S.C § 1395nn (the Stark Act). Relator alleges that ADCS contractually required providers to make these self-referrals. ECF No. 52 ¶ 135. Relator then alleges that ADCS dermatologists are improperly compensated when a mid-level provider they supervise refers pathology services to an ADCS dermatopathologist. *Id.* ¶¶ 140-52. Finally, with respect to submission of Medicare claims, Relator alleges that he has pled "a set of circumstances," *Bookwalter*, F.3d 162 at 176, "where ADCS *not* submitting claims to Medicare— for many thousands of dermatopathology specimens it processed and analyzed each year multiplied over many years—carries no plausibility," ECF No. 108 at 24 (emphasis added). In total, "this combination of factors suggests potential abuse of Medicare," and Relator's case may

4


move to discovery. *Bookwalter*, 946 F.3d at 169.

In sum, the Court finds it premature to dismiss Relator's claims of fraud. Relator has pled these claims with sufficient particularity to withstand the Healthcare Defendants' Motion to Dismiss and advance to the discovery stage of this action.

**BY THE COURT:**

/s/ Chad F. Kenney
**CHAD F. KENNEY, JUDGE**