IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN MAYER,** | : | **CIVIL ACTION** |
| *Plaintiff-Relator*, | : | |
| | : | |
| v. | : | |
| | : | |
| **ADCS CLINICS, LLC,** *et al.*, | : | No. 21-cv-5303 |
| *Defendants*. | : | |

MEMORANDUM

**KENNEY, J.**                                                                                  April 16, 2025

Before this Court are two discovery-related motions. First, third party Inspired Dermatology, PLLC moves to quash a subpoena. ECF No. 165 at 1. Second, Defendants move to compel discovery from Plaintiff-Relator. ECF No. 170 at 1. For the reasons set forth below, this Court will **GRANT** Inspired Dermatology, PLLC's Motion to Quash (ECF No. 165), and **GRANT** in part and **DENY** in part Defendants' Motion to Compel (ECF No. 170).

If there continue to be discovery disputes in this case, the Court will order a special master for discovery.

**I.     BACKGROUND**

Relator is a dermatologist who was employed by Defendant Advanced Dermatology of Colorado, PC, which is a subsidiary of Defendant ADCS Clinics, LLC, beginning in September 2019. ECF No. 52 at 5–7. He alleges that he was terminated by Defendants in March 2020, after alerting ADCS executives to unlawful billing practices used by his employer and ADCS Clinics, LLC's other subsidiaries. *See id.* at 18.

Following his termination, Relator brought this *qui tam* lawsuit against Defendants on behalf of the United States under the False Claims Act, 31 U.S.C. § 3729 *et seq.*, and similar state laws. *See* ECF No. 52 at 42, 47–53; *see also* ECF Nos. 112, 121 (dismissing certain other claims

1

brought by Relator). In his complaint, Relator alleges that Defendants engaged in three unlawful billing practices: (1) using improper billing codes for patient visits, (2) conducting medically unnecessary total body skin exams, and (3) referring specimens to dermatopathologists with whom Defendants have a financial relationship. *See* ECF No. 52 at 12. In response to the complaint, all but one of the Defendants brought several counterclaims that arise from Relator supposedly retaining ADCS's confidential and proprietary information after his employment with Advanced Dermatology of Colorado, PC ended. *See* ECF No. 127 at 40–51 (bringing counterclaims for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2), breach of fiduciary duty, and trespass); ECF No. 128 at 42–54 (same); ECF No. 130 at 48–51 (same); ECF No. 129 at 48–51 (same, and also asserting a breach of contract claim).

The parties are now engaged in discovery, and two discovery-related motions are before the Court.

## II.   DISCUSSION

### A. Inspired Dermatology's Motion to Quash

Inspired Dermatology, PLLC, which is Relator's current dermatology practice, moves to quash a subpoena issued by Defendants. ECF No. 165 at 1. Defendants' subpoena orders Inspired Dermatology to produce materials about Relator's current patients, his examination and billing practices, his compensation and productivity, the compensation and productivity of Relator's employees, "all agreements and records" related to Relator's employment at Inspired Dermatology, and a handful of other materials related to Inspired Dermatology's practices. *See* ECF No. 165-2 at 9–11.

A district court must quash a subpoena if, among other reasons, it subjects a party to an "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). To make that determination, the Court must consider the "relevance" of the information sought, "whether the information can be obtained by

other means," the burdens imposed by the subpoena, "the costs of compliance," "the status of the recipient as a non-party," and any other factors bearing on whether the subpoena may be unduly burdensome. *See Rardon v. Falcon Safety Prods., Inc.*, No. 23-1594, 2023 WL 5347298, at *2 (3d Cir. Aug. 21, 2023).

These factors support quashing Defendants' subpoena, beginning with relevance. The subpoena orders Inspired Dermatology to produce a broad range of information about billing, compensation, employment, and prescribing practices—that has next to no relevance to the parties' claims. All counts of Relator's complaint assert that Defendants submitted false and fraudulent claims, in violation of the False Claims Act and analogous state laws. *See* ECF No. 52 at 12, 42, 47–53. The compensation, employment, and billing practices of a different entity with no affiliation to ADCS's dermatology practices—such as Inspired Dermatology—have little relevance to whether Defendants submitted false claims. *See United States ex rel. Singh v. Bradford Reg'l Med. Ctr.*, 249 F.R.D. 220, 223 (W.D. Pa. 2008) (concluding that a plaintiff's "*own referral patterns*" were not relevant to whether the defendants violated the False Claims Act); *Alphasense Oy v. Tegus, Inc.*, No. 23-cv-1030, 2024 WL 2106560, at *3 (D. Del. Apr. 9, 2024) (rejecting discovery requests about the commercial success of the defendants' products where the focus of the lawsuit was the commercial success of the plaintiffs' products); *cf. Reichard v. United of Omaha Life Ins. Co.*, 805 F. App'x 111, 117 (3d Cir. 2020) (affirming denial of discovery about whether a medical reviewer had denied disability benefits to others because that would "not change [the plaintiff's] burden" to show that her denial of benefits "was unsupported by substantial evidence"). And Defendants do not appear to argue that the subpoena seeks information that is relevant to their counterclaims. Regardless, a broad inquiry into Inspired Dermatology's practices, employee compensation structure, and employee productivity extends far beyond what is relevant to Defendants' counterclaims about Relator retaining their confidential information.

Defendants argue that Relator's billing and prescription practices at Inspired Dermatology are relevant because Relator relied on his "personal observations" and "expertise" to conclude that Defendants submitted false claims, and therefore opened the door to discovery about his experiences and credibility. *See, e.g.*, ECF No. 172 at 10.  However, during the few instances that the complaint refers to Relator's observations, it discusses what Relator observed while he was employed by ADCS. *See, e.g.*, ECF No. 52 at 17–18 (stating that Relator "observed that other[s]" at ADCS stopped using the 99201 code and began to use the 99202 code).  Relator's employment at Inspired Dermatology after the fact is not probative of his observations and knowledge as an ADCS employee. *See Bradford Reg'l Med. Ctr.*, 249 F.R.D. at 223 (rejecting the argument that the plaintiff "open[ed] the door" to discovery about his own referral patterns); *cf. Warnke v. CVS Corp.*, 265 F.R.D. 64, 66–69 (E.D.N.Y. 2010) (in an employment discrimination case, quashing subpoena to a plaintiff's subsequent employers, including because it sought information that was not relevant).  Even if Relator's employment after ADCS were probative, the sheer breadth of discovery Defendants seek about Inspired Dermatology—including about four years' worth of information about its business relationships, policies, compensation schemes, and information about other employees—far exceeds what is relevant to the issue of Relator's experience. *See* ECF No. 165-2 at 9–11.

Defendants' subpoena therefore seeks information that has little relevance to the claims and defenses in this suit, strongly weighing in favor of quashing the subpoena.  The other factors this Court examines to decide if a subpoena is unduly burdensome do not change this conclusion. *See Rardon*, 2023 WL 5347298, at *2.  Inspired Dermatology is not a party to this lawsuit, the subpoena seeks a broad range of documents over a multi-year timeframe, and at least some of that information about Relator's practices could be obtained through other means, such as deposing Relator—further supporting quashing the subpoena. *See id.* (listing these considerations as factors

4

a court may consider to decide if a subpoena poses an undue burden); ECF No. 165-2 at 9–11.

For those reasons, this Court will quash the subpoena. *See* Fed. R. Civ. P. 45(d)(3)(A)(iv). Because this Court concludes that the subpoena imposes an undue burden, it does not reach the other grounds asserted by Relator for quashing the subpoena, such as that the subpoena seeks privileged materials. *See* ECF No. 165-1 at 7–11.

### B. Defendants' Motion to Compel Discovery

Defendants move to compel Relator to respond to their discovery requests. ECF No. 170 at 1 (Interrogatory Nos. 7, 14, and 15; Requests for Production Nos. 12 and 15); *see* Fed. R. Civ. P. 37(a)(3)(B), (a)(4). A party who receives an incomplete discovery response may move to compel discovery. *See* Fed. R. Civ. P. 37(a)(3)(B), (a)(4). However, the discovery sought by the movant must be "relevant to [a] claim or defense and proportional to the needs of the case," considering the issues at stake, the "parties' relative access" to information, "the parties' resources," the role of the discovery "in resolving the issues," and whether the burden of the discovery "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Defendants' discovery requests fall into two categories: discovery about Relator's work experience and discovery about individuals with some connection to this lawsuit. *See* ECF No. 170-1 at 6. This Court addresses each category below.

#### 1. *Discovery About Relator's Work Experience*

Defendants seek Relator's responses to Request for Production No. 12 and Interrogatory No. 7, both of which concern Relator's work experience. *See* ECF No. 170-1 at 9. Defendants' Motion to Compel is denied as to Request for Production No. 12 and granted in part and denied in part as to Interrogatory No. 7.

***Request for Production No. 12.*** Request for Production No. 12 asks Relator to produce the "total number" of (1) times he used each medical billing code from January 2019–2021, (2)

full skin and body exams he performed from January 2019 to the present, and (3) skin biopsies he performed and referred to a dermatopathologist from January 2019 to the present. ECF No. 170-3 at 15. Because Relator allegedly worked for Defendants from September 2019 to March 2020, *see* ECF No. 52 at 5, Request No. 12 covers the period before, after, and during his employment with Defendants.

With respect to the period before and after Relator was employed by Defendants, this information is not relevant and proportional to the parties' claims. As explained above, Relator's own billing and prescription practices at other employers are not relevant to the issue of whether Defendants submitted fraudulent claims. *See supra* Section II.A.; *Bradford Reg'l Med. Ctr.*, 249 F.R.D. at 223 (plaintiff's own referral patterns were not relevant to claims that the defendants violated the False Claims Act). Further, as to the period before Relator worked for Defendants, Relator has stated that he has no prior dermatology work experience. *See* ECF No. 174 at 5. And though Defendants argue that Relator has opened the door to probing his experience and credibility by referring several times to his personal observations as an ADCS employee, *see, e.g.*, ECF No. 176 at 4, Relator's subsequent work experience is not probative of what he observed while he worked at ADCS.[1] *See supra* Section II.A.

---

[1] Defendants cite a couple of cases in support of their argument, but those cases are neither binding nor controlling. *See* ECF No. 170-1 at 14 (citing *United States v. Gilead Scis., Inc.*, No. 17-cv-1183, 2024 WL 3843595 (E.D. Pa. June 18, 2024), and *In re Lincoln Nat'l COI Litig.*, No. 16-cv-6605, 2020 WL 6391312 (E.D. Pa. Feb. 28, 2020)). In *Gilead*, the defendants requested "the bank and account number" into which the relator deposited kickbacks from the defendants. 2024 WL 3843595, at *3. Unlike here, that request was relevant to the volume and nature of the kickbacks that the relator received, and it was significantly less burdensome than the broad request here. *See id.* And in *Lincoln*, the issue was whether plaintiffs made similar mortality assumptions to the defendants, about the same insurance policies, at a specific point in time (plaintiffs' acquisition of those policies). 2020 WL 6391312, at *1. Here, Defendants broadly ask for Relator's billing, examination, and referral practices across a wide timeframe.

Defendants also assert that Relator has indicated that he might be a witness at trial. ECF No. 176 at 4. However, Defendants fail to point to any such indication by Relator. *See id.* (citing

With respect to the period during which Relator worked for Defendants, Defendants are the party who would presumably have "access to [the] relevant information" about Relator's billing and prescription practices, in their internal records and databases. *See* Fed. R. Civ. P. 26(b)(1). Indeed, Defendants admit they "are not seeking responsive information that is in the[ir] control." ECF No. 176 at 6 n.3. However, Defendants fail to identify what other information Relator could produce about his practices as an ADCS employee that would not be duplicative of Defendants' records. And Relator asserts that he has produced "all of the responsive documents that he has in his possession" about his ADCS billing and prescription practices. ECF No. 174 at 3.

***Interrogatory No. 7.*** Interrogatory No. 7 asks Relator to "identify each employer" at which he has performed "dermatology services," besides Advanced Dermatology of Colorado, including his title and responsibilities, salary and benefits, supervisors, and compensation structure. *See* ECF No. 170-2 at 12.

This Court will require Relator to identify each employer at which he has performed dermatology services, and his accompanying titles and responsibilities, but not the remaining categories of information requested by Interrogatory No. 7. *See id.* As explained above, *see supra* Section II.A, Relator's own employment history is not relevant to the issue of whether ADCS engaged in fraudulent billing. However, because it imposes a minimal burden on Relator, and in light of the broad scope of discovery, this Court will permit Defendants to seek basic information (employer, titles, and responsibilities) about Relator's employment history as a dermatologist, insofar as it may lead to evidence relevant to Defendants' counterclaims or to Relator's personal

---

Defendants' own memorandum in support, ECF No. 170-1 at 9). Even assuming that is the case, nothing in the record indicates Relator would testify as an expert witness. And any testimony by Relator as a fact witness would be limited to his personal observations. *See* Fed. R. Evid. 602, 701(c).

7

observations at ADCS.  Relator's benefits and salary, compensation structure, and supervisors at other employers have no relevance to the parties' claims and are not proportional to the needs of the case.  *See supra* Section II.A.

### 2. *Discovery About Individuals with a Connection to this Lawsuit*

Defendants also move to compel Relator's responses to Interrogatory Nos. 14 and 15 and Request for Production No. 15, all which concern individuals with some connection to this lawsuit. *See* ECF No. 170-1 at 16.  Defendants' Motion is granted in part and denied in part as to Interrogatory No. 14, denied as to Interrogatory No. 15, and denied as to Request for Production No. 15.

***Interrogatory No. 14.***  Interrogatory No. 14 concerns Relator's statement that he has "become aware of more information . . . regarding [Defendants'] false claims," including because of an ADCS patient.  *See* ECF No. 170-2 at 19.  The Interrogatory asks Relator to identify "any Person who assisted [Relator] in obtaining such information," "the documents containing [that] 'information,'" and the "time and manner" in which he obtained the information.  *Id.*  The parties dispute whether Relator must, in response to Interrogatory No. 14, disclose the identity of and communications with the ADCS patient who apparently provided Relator with information regarding the additional false claims.[2]  *See* ECF No. 170-1 at 16.

Relator must disclose the identity of the ADCS patient to Defense counsel—subject to the protections outlined below—but Relator need not disclose his communications with the patient or the time and manner of his interactions with the patient.  Relator has, through his own submissions, identified a specific ADCS patient that has factual knowledge relevant to the case.  *See id.*  And a fundamental principle of discovery is that parties are entitled to discover the "name" of "each

---

[2] This ADCS patient is also central to the parties' dispute about Interrogatory No. 15 and Request for Production No. 15.

8

individual," like this patient, who is likely to have relevant factual knowledge.[3]  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).  For that reason, the identity of the ADCS patient is relevant and discoverable.

Relator argues that disclosing the patient's identity and associated communications would violate the work product doctrine, which prohibits discovery of materials "prepared in anticipation of litigation," Fed. R. Civ. P. 26(b)(3)(A).  *See* ECF No. 174 at 13.  He argues that the patient's identity is protected because it reveals why that "one specific witness [was] selected," from the "universe" of ADCS patients, *id.* at 15, and he states that his communications with the ADCS patient include "counsel's views on the case and include their case strategy," and are thus work product.  *Id.* at 13.

However, disclosing the patient's name, without more, does not violate the work product doctrine in this case.  A number of courts have held that individuals' identities constitute work product only in a limited set of cases, such as when the act of disclosing the identities would distinguish who the party "ha[s] and ha[s] not interviewed" and the "questions they asked each interviewee."  *See United States v. All Assets Held at Bank Julius Baer & Co.*, 270 F. Supp. 3d 220, 224–26 (D.D.C. 2017) (discussing cases); *see also Appeal of Hughes*, 633 F.2d 282, 289 (3d Cir. 1980) (where party requested a list of the individuals that another party had interviewed, work product doctrine applied); *but see Savignac v. Jones Day*, 586 F. Supp. 3d 16, 17–19 (D.D.C. 2022) (granting motion to compel response to interrogatory that asked plaintiffs "to identify each person with whom [they] conferred or consulted" about the defendants' leave policies).  Here, this Court will not require Relator to disclose whether he interviewed this patient but not other individuals, the nature or extent of his communications with the patient, or the substance of any of those

---

[3] For this reason, it is insufficient that Relator has decided to produce the patient's redacted Explanations of Benefits.  *See* ECF No. 174 at 9.  Parties are generally entitled to know the identities of individuals with relevant knowledge, so that—for example—they may depose them.  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).

9

communications. Instead, Relator must disclose only the name of an individual who he himself represented as having relevant knowledge of ADCS's "false claims." *See* ECF No. 170-2 at 19. Rule 26 plainly permits such a disclosure. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). Importantly, Relator does not meaningfully dispute that as part of his initial disclosures he could have included the patient on a general list of individuals with knowledge relevant to the case but that he did not do so.[4] *See* ECF No. 177 at 4. To the extent that Relator has now singled out the patient as important to his litigation strategy, that is by Relator's own design.

For those reasons, this patient's identity—standing alone—is not work product. In contrast, disclosing communications between counsel and the patient, and the nature of the questions asked by Relator to the patient in anticipation of this case, would reveal Relator's litigation strategy and opinions, and is therefore protected. *See* Fed. R. Civ. P. 26(b)(3)(B).

Next, Relator argues that this Court should protect the patient's identity because he or she was a confidential informant and could possibly face harassment and retaliation. *See* ECF No. 174 at 11, 19–20. But the confidential informant privilege is a privilege held by the government, not by private individuals. *See United States v. Martinez*, 922 F.2d 914, 920 (1st Cir. 1991). And although Relator brought this suit on behalf of the United States, the United States declined to intervene. *See* ECF No. 28 at 2. Relator has not shown that this patient met the qualifications to be a confidential informant.

Where courts have prevented the discovery of individuals' identities, it has frequently been because a specific statutory protection or privilege applied. *See, e.g.*, *Deleon v. Putnam Valley Bd. of Educ.*, 228 F.R.D. 213, 216 (S.D.N.Y. 2005) (applying state-law privilege, codified by statute,

---

[4] Relator argues only that he lacks a list of ADCS patients in which he could have embedded this specific patient. *See* ECF No. 177 at 4–5. But he does not meaningfully dispute that he could have named this patient on a list of individuals, not just patients, that generally have relevant factual knowledge. *See id.*

10

that protected the identity of someone reporting suspected child abuse); *Iglesias v. U.S. Agency for Int'l Dev.*, 824 F. App'x 1, 2 (D.C. Cir. 2020) (involving a grievance board that denied a motion to compel a source's identity because disclosure of the identity was prohibited by statute). Relator does not point to an applicable statute or privilege that shields the patient's identity. He does not, for example, assert a doctor-patient relationship with this patient—or point to other grounds prohibiting disclosure, such as the First Amendment.

Plaintiff relies on *In re Cigna Corp. Sec. Litig.*, No. 02-cv-8088, 2006 WL 263631 (E.D. Pa. Jan. 31, 2006), but that case is consistent with this Court's holding. *See* ECF No. 174 at 11. In *Cigna*, the court ruled that the plaintiff was not required to disclose a list of confidential sources used to prepare the complaint. *See* 2006 WL 263631, at *1. However, the court concluded that those individuals' identities "should [still] be disclosed" without revealing whether those individuals were confidential informants. *See id.* at *3–4. Here, the Court will not require Plaintiff to disclose the extent to which he relied on the ADCS patient in litigation or the substance of their communications—in other words, the ways in which the patient may have acted similar to a confidential informant. Further, as noted above, Relator could have disclosed the patient's name on a list of individuals with relevant knowledge, but he chose not to do so. *See id.* at *4 (requiring the plaintiff to disclose "those individuals with knowledge as to each paragraph of the Complaint").

Of course, a patient may very understandably fear having his or her identity disclosed in litigation. However, at this stage, that can be addressed adequately through other measures. Relator can move to seal and redact materials about the patient, for Defense counsel to not disclose the patient's identity to their clients, and for an amended protective order. To the extent that any retaliation or harassment of witnesses occurs, this Court will take those allegations very seriously.

Relator makes several other arguments against disclosing the patient's identity. First, he promises not to rely on this patient and his or her testimony for this case. ECF No. 170-6 at 3.

11

However, Relator does not get to pick and choose, through promises, what relevant evidence is produced in discovery. What matters is that the patient may have relevant factual knowledge—including information possibly favorable to Defendants—not whether Relator promises not to rely on the patient's testimony. *See In re Generic Pharms. Pricing Antitrust Litig.*, 571 F. Supp. 3d 406, 410 (E.D. Pa. 2021). Relator also claims that Defendants have a complete patient roster and can therefore discover information about patients of their own accord. *See* ECF No. 174 at 17 n.11. But given the numerous patients in Defendants' nationwide practice, this asks Defendants "to search for the needle in the haystack." *See ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 582 (6th Cir. 2018). That is precisely what discovery seeks to avoid. *See id.* Lastly, Relator argues that because this patient is at ADCS's Florida provider, he or she is outside the scope of discovery. ECF No. 170-6 at 3. Yet Relator brings claims against Defendant ADCS Clinics, LLC, and argues that it promoted fraudulent billing practices nationwide, including through emails to all of its providers. *See* ECF No. 52 at 6, 17. And Relator himself represented that this patient was relevant to learning of additional fraudulent claims by ADCS. *See* ECF No. 170-2 at 19.

Relator is required to disclose the ADCS patient's identity to Defense counsel but may take measures (including by moving to seal materials and amend the protective order) to protect the patient's identity. At this stage, Relator is not required to disclose any other information about the patient or communications with the patient made in anticipation of litigation.

***Interrogatory No. 15 and Request for Production No. 15.*** Interrogatory No. 15 asks Relator to "identify any Person . . . who has provided information, documents, or any type of assistance in connection with this Lawsuit" or with whom Relator has "discussed the Lawsuit." *See* ECF No. 170-2 at 20. Similarly, Request for Production No. 15 asks Relator to produce "[a]ll documents from or relating to any communication [Relator] ha[s] received from any Person who

12

has provided information, documents, or any type of assistance in connection with this Lawsuit." ECF No. 170-3 at 17.

As applied to the ADCS patient discussed by the parties, the Court refers to its ruling on Interrogatory No. 14. Relator need not provide any additional information about the ADCS patient at this juncture, except for his or her name, for the reasons set forth above. *See* Fed. R. Civ. P. 26(a)(1)(A)(i) (entitling parties to discover the "name" of "each individual" who is likely to have "discoverable information," such as relevant factual knowledge).

The Court further adds that Interrogatory No. 15 and Request for Production No. 15 extend to irrelevant information, risk conflicting with the work product doctrine, and are not proportional to the needs of this case. Defendants are entitled to seek discovery about individuals who may have factual knowledge relevant to the parties' claims. *See* Fed. R. Civ. P. 26(a)(1)(A)(i). But Defendants' requests extend beyond that to include any individuals who have assisted in any way with the lawsuit, or with whom Relator has even discussed the lawsuit at all. As written, such requests cover individuals who may not have factual knowledge relevant to the parties' claims, and they therefore cover irrelevant information and are overbroad. *See Bd. of Educ. of Evanston Twp. v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 32 (N.D. Ill. 1984) (rejecting discovery request that asked the defendants to identify anyone who "participated" in preparing discovery answers); *Othon v. Wesleyan Univ.*, No. 3:18-CV-00958, 2019 U.S. Dist. LEXIS 250326, at *5–7 (D. Conn. Nov. 25, 2019). The requests also risk conflicting with the work product doctrine because they extend to communications prepared for the purposes of litigation. *Othon*, 2019 U.S. Dist. LEXIS 250326, at *5–6 (concluding that an interrogatory that asked the defendant to identify "all persons" who answered or "provided information" in connection with discovery requests "runs the risk of infringing on the work product privilege").

### III. CONCLUSION

13

For the above reasons, the Court will **GRANT** Inspired Dermatology, PLLC's Motion to Quash (ECF No. 165) and will **GRANT** in part and **DENY** in part Defendants' Motion to Compel (ECF No. 170).

          **BY THE COURT:**

          /s/ Chad F. Kenney
          _____
          **CHAD F. KENNEY, JUDGE**