## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN MAYER,** | : | **CIVIL ACTION** |
| *Plaintiff-Relator,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **ADCS CLINICS, LLC,** *et al.*, | : | **No. 21-cv-5303** |
| *Defendants.* | : | |

### MEMORANDUM

**KENNEY, J.**                                                                                      **July 22, 2025**

The Court writes for the benefit of the parties and assumes familiarity with the facts of the case. Before this Court are two discovery-related motions. First, Relator moves to compel discovery responses regarding payments that other Defendants made to Defendant ADCS Clinics, LLC and ownership interests held by supervising dermatologists in any Defendant. *See* ECF No. 190-3 at 2–3. Second, Defendants move for a protective order prohibiting disclosure of (1) supervising dermatologists' ownership interests except as "agreed to at the June 17 Hearing" and (2) certain non-party financial information. *See* ECF No. 204-1 at 7. For the reasons set forth below, this Court will grant in part and deny in part Relator's Motion to Compel and grant in part and deny in part Defendants' Motion for Entry of Protective Order.

### I.    DISCUSSION

A party may move to compel discovery responses, Fed. R. Civ. P. 37(a)(3)(B)(iv), where the discovery is "relevant to [a] claim or defense and proportional to the needs of the case," *see* Fed. R. Civ. P. 26(b)(1). In deciding whether discovery is relevant and proportional, the Court must consider the issues at stake, the "parties' relative access" to information, "the parties' resources," the role of the discovery "in resolving the issues," and whether the burden of the discovery "outweighs its likely benefit." *Id.*

Conversely, a party may move for a protective order prohibiting disclosure of information to protect against "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Court may consider a number of factors, including whether the discovery would impinge on a party's privacy interests, whether the discovery is being sought for an improper purpose, and whether disclosure would "promote fairness and efficiency" in a given case. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 671 (3d Cir. 2019) (listing a number of factors, which are neither "exhaustive" nor "mandatory" (citation omitted)).

## A. Payments by Other Defendants to Defendant ADCS Clinics, LLC

Relator moves to compel the production of documents that "show the amount each Defendant pays to ADCS Clinics, LLC each year in relation to the Defendant's annual revenue, costs, and profit." ECF No. 190-3 at 2. According to Relator, payments to Defendant ADCS Clinics are relevant to (1) establishing ADCS Clinics's liability for the conduct of other Defendants and (2) Relator's Stark Law claims. *See* ECF No. 190-1 at 6–7. These arguments fail, beginning with Relator's argument about Defendant ADCS Clinics's liability.

There are two ways to establish that ADCS Clinics is liable for the conduct of other entities. *See Phoenix Can. Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1476–77 (3d Cir. 1988). The Court can either pierce the corporate veil against ADCS Clinics or ADCS Clinics can be directly involved in the conduct of another entity, including by serving as the entity's agent. *See id.* Neither approach permits Relator to compel payment information in this case.

First, Relator claims that he is not pursuing a veil-piercing theory against ADCS Clinics. *See* ECF No. 199 at 1–3; ECF No. 201 at 1 n.1. And, regardless, his complaint does not appear to plead allegations—such as commingling of assets—that would have given Defendants notice of that theory. *Imagineering, Inc. v. Lukingbeal*, No. 94 CIV. 2589, 1997 WL 363591, at *3 n.4 (S.D.N.Y. June 30, 1997) (involving complaint that alleged facts sufficient to give notice that a

2

veil-piercing theory of liability was being pursued); *see also Arnold v. LME, Inc.*, 537 F. Supp. 3d 1050, 1057 (D. Minn. 2021). Instead, Relator claims that a showing that ADCS Clinics generally controlled other Defendants is enough to hold it liable. *See* ECF No. 199 at 2. But the cases Relator cites do not support this conclusion; each case involved some direct participation by the supervising entity. *See United States v. Kindred Healthcare, Inc.*, 469 F. Supp. 3d 431, 454 (E.D. Pa. 2020) (relator alleged facts sufficient to show "direct participation" of a parent corporation in a fraud scheme); *United States ex rel. Ellsworth Assoc. v. CVS Health Corp.*, 660 F. Supp. 3d 381, 404 (E.D. Pa. 2023) (stressing that "there must be 'some level of direct involvement'" by an entity for liability to attach under the False Claims Act for the conduct of other entities). Relator has pointed to no cases establishing that general control by one entity of another can establish liability.

Second, though Relator's Complaint makes allegations concerning ADCS Clinics's direct involvement in fraud, the payment information he seeks is minimally relevant to those allegations. *See* ECF No. 52 at 3, 20. According to the Complaint, ADCS Clinics issued orders to providers directing them to engage in fraudulent practices. *See id.* That theory turns on the policies and directives issued by ADCS Clinics, not the specific payment relationship between Defendants. *See id.* The payment relationships between Defendants are therefore minimally relevant to "resolving the issues," and the burden Defendants would face in pulling and preparing payment and financial data outweighs the benefit of this discovery. *See* Fed. R. Civ. P. 26(b)(1). Relator's request is therefore not proportional. *See id.* (requiring court to consider, when assessing proportionality, "the importance of the discovery in resolving the issues" and "whether the burden . . . outweighs [the discovery's] likely benefit").

Relator's argument that payment information is relevant to his Stark Law claims also fails. The only Stark Law claims that Relator has pled relate to the overcompensation of dermatologists

who supervise mid-level providers. *See, e.g.*, ECF No. 52 at 4, 26. And courts generally limit discovery to claims that are pled. *See, e.g.*, *Lifeguard Licensing Corp. v. Kozak*, No. 15-cv-8459, 2016 WL 3144049, at *3 (S.D.N.Y. May 23, 2016). Information about the percentage of profits and revenue each Defendant entity turned over to ADCS Clinics has little relevance to whether individual supervising dermatologists were overcompensated. That is true regardless of whether these were outside referrals or referrals within a multi-state practice, as Relator attempts to argue. *See* ECF No. 200 at 5. And for the reasons articulated above, even if that payment information has some relevance, the request is not proportional.

In light of the foregoing, Relator's Motion to Compel is denied with respect to payments made by other Defendants to Defendant ADCS Clinics, LLC.

### B. Ownership Interests and Non-Party Financial Information

Next, Relator moves to compel production of documents regarding "each Supervising Dermatologist['s] . . . ownership or stock ownership in any Defendant." ECF No. 190-3 at 3. Defendants, in response, move for a protective order prohibiting disclosure of that information, except as "agreed to at the June 17 Hearing," as well as disclosure of certain financial information from non-parties, namely Dr. Steven Grekin. ECF No. 204-1 at 7. It is undisputed that at the June 17, 2025 Hearing, Defendants agreed to disclose stock and other ownership interests received by supervising dermatologists as "compensation." *See* ECF No. 208 at 2–3; ECF No. 204-1 at 4.

#### 1. *Ownership Interests*

Relator claims that supervising dermatologists' ownership interests are relevant to his Stark Law claims. ECF No. 190-1 at 8. The Stark Law prohibits a physician from making referrals to entities with whom the physician has "a financial relationship." 42 U.S.C. § 1395nn(a)(1). Under the Stark Law, a plaintiff can demonstrate a financial relationship in two ways. *See id.* § 1395nn(a)(2). The Plaintiff can show that the physician either has "an ownership or investment

interest in the entity" or "a compensation arrangement" with the entity. *Id.*

Relator's Complaint makes allegations only as to a compensation arrangement—it lacks allegations about dermatologists' ownership or investment interests. *See, e.g.*, ECF No. 52 at 4, 26 (asserting that dermatologists were "compensated above fair market value"). And Relator is entitled to discovery only if it is relevant to the claims he pled, not to "anticipated" or "potential" claims. *See Lifeguard Licensing Corp.*, 2016 WL 3144049, at *3. Accordingly, discovery about Defendants' compensation arrangements, including where the arrangements included ownership interests like stock, is relevant to his Stark Law claims. But a broad inquiry into dermatologists' ownership interests is not relevant to the Complaint as pled.[1]

Relator also claims, for the first time in response to Defendants' Motion, that ownership information is relevant to impeaching potential witnesses for bias. *See* ECF No. 208 at 1–2. While evidence of a dermatologist's affiliation with Defendants is certainly probative of bias, *see United States v. Abel*, 469 U.S. 45, 52 (1984), an unlimited inquiry into all connections between supervising dermatologists and Defendants is inappropriate. Discovery has already ballooned, with the Parties being on at least their fourth set of discovery requests. *See* ECF No. 213-1 at 1. Through that discovery, Relator has obtained significant evidence to impeach Defendants' dermatologists for bias, such as testimony about their leadership roles within Defendants' practices, *see* ECF No. 208 at 3, and their employment agreements, tax forms, and compensation information, *see* ECF No. 212 at 7. *See Pipkin v. Acumen*, No. 1:18-cv-00113, 2019 U.S. Dist. LEXIS 206233, at *3–4

---

[1] For similar reasons, Relator's argument that ownership information is relevant to showing that Defendants operated as a single nationwide practice fails. *See* ECF No. 208 at 4–5. Relator's Stark Law claims are premised on the compensation arrangements of supervising dermatologists—the fact that Defendants operated nationwide is minimally relevant to Relator's Stark Law theory. And because this information has minimal importance to resolving the issues, and in light of the burden it would place on Defendants, it is not proportional to the needs of the case.

(D. Utah Nov. 26, 2019) (plaintiff was not required to produce evidence of how lawsuit was funded, including where the defendant had "various [other] tools at his disposal for questioning and ascertaining witnesses bias and credibility"); *Alexander v. F.B.I.*, 186 F.R.D. 144, 146 (D.D.C. 1999). And Relator may ultimately ask any witnesses whether "they have a financial interest in the outcome of the case." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 312 (D. Nev. 2019) (denying discovery into source of litigation funding).

With that backdrop in mind, additional evidence of bias is of diminishing value that is outweighed by the burden of producing evidence at this stage. Furthermore, this request appears to be a fishing expedition into a Stark Law theory that Relator did not plead in the Complaint. *See In re Avandia*, 924 F.3d at 671 (courts may consider whether discovery is sought for an improper purpose in deciding a motion for a protective order). Accordingly, this request is not proportional to the needs of the case.

Relator also argues that Defendants should be required to disclose a supervising dermatologist's ownership "in any ADCS entity." *See* ECF No. 208 at 1. However, Relator's discovery request and Motion to Compel plainly limited his request to "ownership or stock ownership in *any Defendant*." *See* ECF No. 190-3 at 3 (emphasis added). Discovery into ownership interests in "any ADCS entity"—an undefined and expansive term—would undercut the Parties' agreement to limit discovery in this case to certain ADCS entities, *see* ECF No. 150 at 3, is not proportional to the needs of the case, and has ultimately diminished relevance to Relator's theory that supervising dermatologists were compensated above fair market value.

Lastly, Relator argues that Defendants have used a self-serving definition of compensation in responding to his discovery request. *See* ECF No. 208 at 2–3. To the extent that is the case, the Stark Law defines a "compensation arrangement." *See* 42 U.S.C. § 1395nn(h)(1); 42 C.F.R.

6

§ 411.354(c). In response to Relator's discovery request, Defendants shall disclose each supervising dermatologist's "ownership or stock ownership in any Defendant," *see* ECF No. 190-3 at 3, where that ownership was received as part of a "compensation arrangement," as defined by the Stark Law. With respect to the issue of ownership, Relator's Motion to Compel is otherwise denied and Defendants' Motion for Entry of Protective Order is otherwise granted.

### 2. *Dr. Grekin's Financial Information*

Defendants also move for a protective order prohibiting the disclosure of "personal financial information from non-parties . . . where that information is irrelevant to the supervision compensation arrangement theories" of the Complaint. ECF No. 204-1 at 7. Specifically, Defendants note that, during a deposition, Relator asked Dr. Grekin about his ownership interests in Defendants, as well as about the amount that Defendants paid Dr. Grekin to purchase his practice in 2014. *See id.* at 7–9.

With respect to ownership information, in light of the Court's above analysis of the ownership issue, Relator may question supervising dermatologists about ownership interests in any Defendant only insofar as those interests were received as compensation.

However, with respect to the 2014 purchase of Dr. Grekin's practice, Defendants' Motion for Entry of Protective Order is denied. Relator has put forth evidence that when an entity purchases a physician's practice upon hiring the physician—and the physician therefore receives a large upfront payment—the physician's base compensation can be significantly lower. *See* Todd Shryock, *Private Equity is Coming*, Med. Econ. J., November 2019, at 7. Information about the purchase price of the practice, even if the purchase occurred several years before the time period identified in the Complaint, is therefore relevant to whether a physician was compensated at fair market value—the crux of Relator's Stark Law claims. And Defendants have not met their burden of showing that this questioning warrants a protective order, making only conclusory assertions

that the questioning is invasive. *See* ECF No. 204-1 at 9; ECF No. 212 at 12. In their Reply Brief, Defendants also argue that this information falls outside timeframe agreed upon by the Parties for discovery. *See* ECF No. 212 at 13. However, the Parties' agreement limited the time period for discovery requests to specific Defendants, whereas Dr. Grekin is a non-party. *See* ECF No. 150 at 3.

## II.   <u>CONCLUSION</u>

For the foregoing reasons, Relator's Motion to Compel will be granted in part and denied in part. The Motion will be granted insofar as Defendants must produce documents that show "each Supervising Dermatologist['s] . . . ownership or stock ownership in any Defendant," ECF No. 190-3 at 3, if that ownership interest was part of a compensation arrangement, as defined by the Stark Law, *see* 42 U.S.C. § 1395nn(h)(1); 42 C.F.R. § 411.354(c). The Motion to Compel will be denied in all other respects. Defendants' Motion for Entry of Protective Order will also be granted in part and denied in part. With respect to ownership, the Motion for Entry of Protective Order is granted in part and denied in part for the same reasons as Relator's Motion to Compel. With respect to the purchase price of Dr. Grekin's practice, the Motion for Entry of Protective Order is denied. The Motion for Entry of Protective Order is granted in all other respects. An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**