IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JONATHAN MAYER,** | : | **CIVIL ACTION** |
| *Plaintiff-Relator*, | : | |
| | : | |
| v. | : | |
| | : | |
| **ADCS CLINICS, LLC,** *et al.*, | : | No. 21-cv-5303 |
| *Defendants*. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                           August 20, 2025

The Court writes for the benefit of the parties and assumes familiarity with the facts of the case. Before this Court is Relator's Motion to Compel (ECF No. 214). For the reasons set forth below, the Motion (ECF No. 214) will be **GRANTED** in part and **DENIED** in part.[1]

**I.      DISCUSSION**

Just as with the Parties' past discovery motions, *see* ECF Nos. 165, 170, 183, 190, 191, 204, 213, the Federal Rules of Civil Procedure guide this Court's analysis. Rule 37 permits a party to compel a discovery response, Fed. R. Civ. P. 37(a)(3)(B)(iv), where the discovery is "relevant to [a] claim or defense and proportional to the needs of the case," *see* Fed. R. Civ. P. 26(b)(1). In assessing relevance and proportionality, the Court must consider the issues at stake, the "parties' relative access" to information, "the parties' resources," the role of the discovery "in resolving the issues," and whether the burden of the discovery "outweighs its likely benefit." *Id.*

Relator's Motion to Compel raises eight issues.[2] The Court addresses each issue in turn.

---

[1] In his reply brief and the Parties' Joint Status Report, Relator makes arguments as to issues that were not raised by his original Motion. *See* ECF No. 230 at 21–23; ECF No. 226 at 3. The Court has requested additional briefing on those issues, and the instant Opinion does not rule on them. *See* ECF No. 231 at 1.

[2] After Relator filed his Motion to Compel, the Parties were able to resolve a handful of other issues. *See* ECF No. 230 at 14–20.

**A. Discovery Concerning Sixteen Office Visits**

Relator moves to compel "visit notes, claim forms, and EOBs/ERAs for all patients insured by a Government Healthcare Program" for "all [office] visits where CPT Code 99203 was billed" during a certain timeframe. *See* ECF No. 183-5 at 10. Relator later agreed to narrow this request to a sample of 361 office visits. *See* ECF No. 214-1 at 5–6. Though Defendants have produced visit notes for 345 of those office visits, they state that they have been unable to produce documents for the remaining 16 visits despite "an extensive and diligent search."[3] *See* ECF No. 230 at 2. The Court will deny Relator's Motion with respect to this issue.

Though a "party must make a reasonable inquiry to determine whether responsive documents exist," *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (S.D. Cal. 2012), it need not boil the ocean searching for documents. Once a party undertakes a reasonable inquiry to locate documents and identifies the efforts it took "with sufficient specificity," *id.* (citation omitted), "[t]he Court is entitled to rely on representations . . . that all relevant documents have already been produced or no such documents exist." *See Wright v. Rochester Sportfishing, Inc.*, No. 6:24-CV-06240, 2025 WL 1024002, at *5 (W.D.N.Y. Apr. 7, 2025).

Here, Defendants represent that they have searched their electronic medical record system, paper files, and multiple physical locations to locate the outstanding documents. ECF No. 230 at 2. They also represent that they will identify if there are "other reasonably accessible physical locations left to be searched for these files." *Id.* at 2–3. To the extent that Defendants are unable to find the outstanding documents in "other reasonably accessible physical locations," *id.*, Defendants have taken reasonable steps to locate the documents, and the Court is entitled to rely

---

[3] To the extent that Relator's Motion to Compel concerns Defendants' failure to produce claim forms and EOBs/ERAs for the 361 office visits, Defendants have agreed to request and produce that information. *See* ECF No. 230 at 3.

2

on their representation that all relevant documents have been produced. *See Wright*, 2025 WL 1024002, at *5.

Relator states that a sample size of 361 office visits is necessary "to achieve a 95% confidence level when extrapolating any results out to the entire universe of [office] visits." ECF No. 214-1 at 6. In turn, he states that Defendants should be required "to stipulate not to criticize a confidence level of less than 95%." *Id.* Though the Court acknowledges that it is Defendants' inability to locate documents that has reduced Relator's sample size, the fact that data from only 345 office visits is available is a matter that can be adequately addressed through direct- and cross-examination. *Cf. Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 809 (7th Cir. 2013) (the basis for a data set can be addressed through examination). And this Court does not find a lack of information concerning sixteen office visits to be so prejudicial to Relator to require Defendants to stipulate not to criticize a confidence level—at the least, at this juncture. The Court may revisit this issue at the motion *in limine* stage if needed.

### B. Employment Contracts for Four Dermatologists

Relator moves to compel "all Employment Contracts for each Supervising Dermatologist." ECF No. 183-5 at 13. Though Defendants have produced some documents responsive to this request, Relator argues that Defendants have failed to produce employment contracts for four supervising dermatologists: Dr. Katherine Messner, Dr. Kevin Boyd, Dr. Kim Hiatt, and Dr. Narina Grove. ECF No. 230 at 4. This Court will grant Relator's Motion with respect to this issue.

Defendants do not dispute that in response to Relator's request for all supervising dermatologists' W2 forms, Defendants produced the W2 forms for the above four doctors. *See id.* And it would be minimally burdensome to produce four dermatologists' employment agreements. Without deciding as a matter of law whether these individuals are supervising dermatologists, this Court will require Defendants to produce these employment contracts.

### C. Compensation Reports for Two Supervising Dermatologists

Relator moves to compel "all documents and reports pertaining to the compensation of each Supervising Dermatologist for the supervision of Mid-Level Provider(s)." ECF No. 183-5 at 16. Though Defendants have produced responsive documents for most supervising dermatologists, Relator argues that Defendants have failed to do so for Dr. Jodi Langer, with respect to April 2020, and Dr. Andrew Kalajian, with respect to February 2021. *See* ECF No. 230 at 5. According to Defendants, however, Dr. Langer's April 2020 compensation report has been produced. *Id.* Furthermore, Defendants state they will search for Dr. Kalajian's February 2021 compensation report. *Id.*

This Court will grant in part and deny in part Relator's Motion with respect to this issue. On or before **August 29, 2025**, Defendants shall identify the bates number range for Dr. Langer's April 2020 report and the reasonable efforts taken to locate Dr. Kalajian's February 2021 report and whether those efforts were successful. Because Defendants represent that they have produced Dr. Langer's April 2020 compensation report, ECF No. 230 at 5, it should be possible for them to identify this document in one of their productions. And, with respect to Dr. Kalajian, to the extent that Defendants are unable to produce a February 2021 report, the Court may rely on that representation if Defendants exercised due diligence in attempting to locate such a document. *See Wright*, 2025 WL 1024002, at *5.

### D. Documents Concerning Productivity

Relator moves to compel Defendants to produce "all documents and reports pertaining to the calculation of Net Collected Receipts for each Mid-Level Provider." ECF No. 183-5 at 19. Though Defendants produced productivity reports in response to this request, Relator argues that Defendants must produce additional documents to further explain the inputs used in the productivity reports to calculate net receipts. *See* ECF No. 214-1 at 8. This Court will deny

4

Relator's Motion with respect to this issue.

Defendants' productivity reports are responsive to Relator's request because they calculate the net receipts by subtracting refunds and costs from receipts. *See* ECF No. 214-1 at 8; *see also* ECF No. 227 at 2. And Defendants also produced spreadsheets identifying items "deducted or excluded from the calculation for Net Collected Receipts." ECF No. 230 at 6. Defendants represent that their search yielded no other responsive documents. *See id.* at 5. The Court is entitled to rely on Defendants' good-faith representation that no additional responsive documents exist. *Wright*, 2025 WL 1024002, at *5. Moreover, the documents Defendants have produced—which plainly show the net receipt calculation and deductions from the calculation—respond to the heart of Relator's request. The burden of requiring Defendants to conduct further searches for additional documents outweighs the "likely benefit" to Relator. *See* Fed. R. Civ. P. 26(b)(1).

Relator argues that Defendants must possess additional documents "because the numbers on the productivity reports must come from somewhere." ECF No. 230 at 6. However, courts have repeatedly rejected this type of speculation that more documents must exist. *See, e.g.*, *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. CV 15-6480, 2020 WL 3498161, at *3 (E.D. Pa. June 29, 2020) (collecting cases); *United States v. O'Keefe*, 537 F. Supp. 2d 14, 22 (D.D.C. 2008) ("[V]ague notions that there should have been more than what was produced are speculative and are an insufficient premise for judicial action."); *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) ("The notion that a document production is insufficient based on a belief that documents must exist simply is not enough to grant a motion to compel . . . ."). And Relator in effect seeks to transform his initial document request, concerning the calculation of *net* receipts, into a request for all the underlying receipts and refunds.

Defendants produced responsive documents and represented—with no evidence of bad faith—that additional documents do not exist. In light of the above, the Court will deny the Motion

5

with respect to this issue.

### E. Management Services Agreements

Relator moves to compel "all Management Services Agreements" entered between Defendant ADCS Clinics, LLC or Defendant ADCS Billings, LLC and each other Defendant. ECF No. 214-5 at 3; ECF No. 214-6 at 3. In response, Defendants offered to produce redacted management services agreements for the entities to whom the Parties previously agreed to limit discovery, *see* ECF No. 150 at 3. *See* ECF No. 224 at 14. However, Relator argues that Defendants must stipulate that the agreements are "identical to the [management services agreements] executed by" other ADCS state entities and that, in any case, the agreements must be unredacted. *See* ECF No. 214-1 at 10–11. This Court will grant in part and deny in part Relator's Motion to Compel with respect to this issue.

First, no stipulation is necessary. The Parties previously agreed to limit discovery to a handful of states to avoid the burden of conducting discovery regarding Defendants' entire nationwide network of dermatology practices. *See* ECF No. 150 at 3. No part of that agreement required Defendants to stipulate to other states following the same procedures. *Id.* And indeed, requiring Defendants to verify that other entities use identical management services agreements subverts the purpose of the Parties' stipulation by requiring Defendants to conduct a nationwide review of each and every entity's agreements. Relator may still argue that the responding entities' agreements are reflective of a nationwide practice.

However, Defendants must provide unredacted management services agreements between ADCS Clinics and the responding entities from 2018–2021.[4] These agreements are relevant to establishing ADCS Clinics' direct involvement in the alleged fraud because the agreements

---

[4] Relator agreed to limit his request to this period. ECF No. 224-1 at 3.

identify the responsibilities performed by ADCS Clinics. And to the extent that certain parts of the agreements are irrelevant, redactions for relevancy are generally disfavored, particularly when—like here—there is a confidentiality order in place, *see* ECF No. 135 at 1. *See Durling v. Papa John's Int'l, Inc.*, No. 16-CIV-3592, 2018 WL 557915, at *9 (S.D.N.Y. Jan. 24, 2018). However, because the Complaint contains no allegations about Defendant ADCS Billings' role in submitting false claims—nor any allegations about its particular conduct at all—the Court will not require Defendants to produce agreements for ADCS Billings.

Defendants argue that in light of this Court's July 22 discover ruling, redacting financial information from the agreements is appropriate. On July 22, this Court denied Relator's previous Motion to Compel with respect to documents "show[ing] the amount each Defendant pays to ADCS Clinics, LLC." ECF No. 217 at 2, 4 (citation omitted). That information, this Court observed, was minimally relevant to the theories of liability pled by the Complaint and was not proportional to the needs of the case. *See id.* at 2–4.

However, unlike a sweeping inquiry into all money flowing from other Defendants to Defendant ADCS Clinics, LLC, the management services agreements at issue now are relevant to Plaintiff's claims because they set forth the responsibilities performed by ADCS Clinics. Those responsibilities are probative of ADCS Clinics' role in perpetuating any fraud and its direct liability. And redacting the management services agreements would actually increase the burden on Defendants by requiring them to take additional steps before producing the documents—in contrast to the issues considered by this Court's prior ruling. Nor have Defendants identified any privilege that applies, which requires redacting information in this instance. *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege.").

Of course, this Court acknowledges that some of the financial information contained in the

7

management services agreements may illustrate financial relationships between other Defendants and Defendant ADCS Clinics. But given the relevance of the management services agreements to this case, the intended purpose of Relator's request does not appear to be to circumvent this Court's July 22 ruling. And to the extent that Relator later attempts to argue unpled theories of liability, Defendants may raise this issue in a motion *in limine*. *See Laporta v. Bmw of N. Am., LLC*, No. 2:17-cv-5145, 2019 WL 988675, at *5–6 (C.D. Cal. Jan. 24, 2019) (granting motion *in limine* to preclude the plaintiff from arguing certain theories not raised in the complaint).

### F. Audit Logs as to Providers for Whom Relator Took Call

Relator moves to compel Defendants to produce "EMR audit logs . . . for the providers that [Relator] took call for" during a period of three months.[5] ECF No. 214-4 at 3. The Court will grant Relator's Motion with respect to this issue.

Audit logs as to providers for whom Relator took call are relevant to Defendants' counterclaims. Because the logs show the actions taken in a patient's medical records and the actor taking them, *see* Julia Adler-Milstein et al., *EHR audit logs: A new goldmine for health services research?*, J. Biomedical Informatics, January 2020, at 1, the logs—in connection with other documents and testimony—may establish that Relator accessed certain patient files because he was on call for the patients' regular providers. In doing so, the logs could negate a basis for Defendants' counterclaims—that Relator accessed patient records for improper reasons. *See, e.g.*, ECF No. 127 at 49–51. These audit logs are particularly relevant because Relator represents that he was on call for other providers a significant amount of the time. *See* ECF No. 230 at 11.

This discovery request is also proportional to the needs of the case. Though Defendants

---

[5] Though Relator's original discovery request sought audit logs from September 2019 to March 2020, ECF No. 214-4 at 3, Relator has since clarified that he seeks audit logs for January 2020 through March 2020. *See* ECF No. 214-1 at 12 n.11.

argue that these logs contain many thousands of lines of data, producing the logs themselves does not appear significantly burdensome. The parties appear to agree that Relator took call for only five providers. *See* ECF No. 224 at 21 ("Relator here requests access logs for five providers . . . ."). In any case, identifying the providers for whom Relator took call would seem to be readily verifiable. And given that these logs may contain information central to Defendants' counterclaims—whether Relator improperly accessed patient records—any burden is outweighed by the benefit of the discovery. Accordingly, the Motion is granted with respect to this issue.

### G. Additional Discovery Concerning Audit Logs and Communications as to "Telehealth" and Similar Terms

Relator moves to compel Defendants to produce audit logs for patients that were "NOT a patient of [Relator's]" during the period in which Relator allegedly accessed records without authorization. *See* ECF No. 214-4 at 2. Relator also moves to compel Defendants to produce "[a]ll emails sent or received by [five of Defendants' employees] regarding 'telehealth', 'telemedicine', 'teledermatology', and/or 'telederm' in March 2020." ECF No. 230 at 12 (second alteration in original); *see* ECF No. 214-4 at 3.

Relator has represented that he would forego these requests if he received documents regarding audit logs with respect to providers for whom he took call. *See* ECF No. 230 at 9–10, 12. Because this Court will grant Relator's Motion with respect to providers for whom Relator took call, *see supra* Section I.F, it will deem the instant requests withdrawn and deny the Motion as moot with respect to these issues.

### II. CONCLUSION

For the foregoing reasons, the Court will **GRANT** in part and **DENY** in part Relator's Motion to Compel (ECF No. 214). An appropriate Order will follow.

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**