IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JONATHAN MAYER, | : | CIVIL ACTION |
| *Plaintiff-Relator*, | : | |
| | : | |
| v. | : | |
| | : | |
| ADCS CLINICS, LLC, *et al.*, | : | No. 21-cv-5303 |
| *Defendants*. | : | |

MEMORANDUM

**KENNEY, J.**                                                                                                    November 5, 2025

The Court writes for the benefit of the Parties and assumes familiarity with the facts of the case. Relator moves to strike certain expert rebuttal reports. For the reasons set forth below, Relator's Motion (ECF No. 245) will be **GRANTED** in part and **DENIED** in part.

I.     DISCUSSION

Relator moves to strike three rebuttal expert reports as offering new opinions not intended to rebut or contradict his experts: (1) Opinions 4 and 7, as well as the Conclusion, of the Bernstein Report, (2) the Rigel Report, and (3) the Barsky Report. *See* ECF No. 245-1 at 4–10. Relator also moves to strike the Barsky Report because it offers legal conclusions. *See id.* at 12.

When an expert report "is intended solely to contradict or rebut [a report] on the same subject matter," the party must disclose the expert as set forth by court order, as stipulated, or within "30 days after the other party's [expert] disclosure." Fed. R. Civ. P. 26(a)(2)(D)(ii). Here, Opinion 7 of the Bernstein Report is not "intended solely to contradict or rebut" Relator's experts. *See id.* And the Barsky Report on numerous occasions inappropriately opines on issues of law and reaches legal conclusions. But striking these opinions is too extreme of a remedy. Instead, this Court will permit Relator to respond to Opinion 7 of the Bernstein Report and Defendants to resubmit the Barsky Report. The Motion to Strike is otherwise denied.

### A. The Bernstein Report

Relator moves to strike Opinions 4 and 7, as well as the Conclusion, of the Bernstein Report. ECF No. 245-1 at 6–8. Opinion 4 states that the fair market value of a physician's compensation should be measured by total compensation rather than supervision compensation. *See* ECF No. 246-4 at 25. The Report then evaluates total compensation, which it concludes is consistent with fair market value. *See id.* at 25–29. The Report's Conclusion reiterates some of the findings of Opinion 4. *See, e.g.*, *id.* at 34 (stating that "total compensation is the more appropriate measure").

Relator moves to strike Opinion 4 and the Conclusion, as well as all corresponding exhibits and tables, because his expert report, the Zigrang Report, only examines whether supervision compensation is consistent with fair market value. *See* ECF No. 245-1 at 6, 8. However, an expert can rely on new methodologies to rebut another expert's opinions. *See Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016). The Bernstein Report does just that. It identifies flaws with relying on supervision compensation to evaluate fair market value and proposes a different method (total compensation) to assess fair market value instead. *See* ECF No. 246-4 at 25.

Relator argues that total compensation and supervision compensation are separate issues, and that both must correspond to fair market value. *See* ECF No. 245-1 at 7. But to the extent that is true, that goes to the relevance of Bernstein's opinions at summary judgment and at trial, as well as potentially to this Court's interpretation of Stark Law provisions on fair market value at summary judgment. At this juncture, the Parties appear to disagree about how to measure fair market value. And given this dispute, at this stage, the mere use of a different method is not a basis for excluding Opinion 4 and the Conclusion of the Report, nor were Defendants required to affirmatively introduce this Opinion.

Next, Opinion 7 of the Bernstein Report assesses the commercial reasonableness of Defendants' employment agreements, which it concludes are commercially reasonable. *See* ECF No. 246-4 at 31–33. According to Defendants, this Opinion rebuts the Zigrang Report's passing remark that commercial reasonableness is one of three core ways to defend against a Stark Law claim. *See* ECF No. 247 at 13; *see* ECF No. 246 at 18 n.18. (commercial reasonableness is mentioned just this one time in a footnote of the Zigrang Report). But Opinion 7 does no such thing. Rather than rebut or contradict the importance of commercial reasonableness, the Bernstein Report opines that Defendants' arrangements were commercially reasonable. And in doing so, it effectively "adopted [Zigrang's] assertion and came up with a calculation to address it[.]" *Cooper Tire & Rubber Co. v. Farese*, No. CIV.A3:02CV210, 2008 WL 5104745, at *2 (N.D. Miss. Nov. 26, 2008). A rebuttal report is not permitted to serve as "a procedural back door" for this type of affirmative opinion. *See id.*

Striking Opinion 7, however, is too extreme of a remedy. Before excluding an expert opinion, courts consider the prejudice to the moving party of allowing the testimony, the ability to cure the prejudice, disruption to the litigation and the court's docket, evidence of bad faith, and the importance of the evidence. *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012); *accord BearBox LLC v. Lancium LLC*, 125 F.4th 1101, 1115–16 (Fed. Cir. 2025) (applying Third Circuit law). And exclusion is an "extreme sanction" which typically requires "a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791–92 (3d Cir. 1994) (internal quotations and citations omitted). Here, the "extreme sanction" of exclusion is not warranted. *See id.* Trial is still months away, this Court will afford Relator time to rebut this Opinion, and Relator had an opportunity to depose Mr. Bernstein and asked him questions about commercial reasonableness. *See* ECF No. 250 at 6; ECF No. 251 at 5–6. And in light of the above and the complex nature of both the legal and factual

3

backdrop of this case, the Court does not find the mere inclusion of this Opinion to amount to bad faith.

Relator argues that this Court should follow *Bradley v. Amazon.com, Inc.* to exclude Defendants' rebuttal expert opinions. ECF No. 249 at 9–10 (citing No. CV 17-1587, 2023 WL 2574572 (E.D. Pa. Mar. 17, 2023)). But *Bradley*, which in any case is not binding, differs in important respects. There, the plaintiff was not given an opportunity to depose the expert, the expert's report was redundant because it covered issues addressed by two other experts, and the report would have "only serve[d] to confuse or mislead the jury" because it conflicted with the theories presented by the plaintiff's other experts. *Id.* at *14–15. And though this Court acknowledges that it is reopening the expert discovery period for limited purposes, the extension is not so significant to disrupt this litigation, given the complexity and ▓▓▓ nature of this case. *See* ECF No. 138 at 1 (originally setting an August 2025 deadline for expert discovery in this case).

### B. The Rigel Report

Next, Relator moves to strike the Rigel Report, which Defendants argue rebuts the Hall Report. *See* ECF No. 245-1 at 8–9. Among other things, the Hall Report analyzed 361 patient visits to determine if the Centers for Medicare and Medicaid Services (CMS) would cover total body skin exams in those instances. *See* ECF No. 246-1 at 18–20. To aid in that determination, the Report cites extensively to guidance from the U.S. Preventative Services Task Force, on which CMS relies to make coverage decisions, *see* 42 U.S.C. § 1395x(ddd)(1)(B). *See, e.g.*, ECF No. 246-1 at 15–16, 19. The Task Force does not recommend skin cancer screening in asymptomatic individuals, but its recommendation does not apply to individuals with "a history of premalignant or malignant skin lesions," "symptomatic patients, including those who present with a suspicious skin lesion, or those already under surveillance because of a high risk of skin cancer." U.S.

4

Preventative Servs. Task Force, *Skin Cancer: Screening* (Apr. 18, 2023), https://www.uspreventiveservicestaskforce.org/uspstf/recommendation/skin-cancer-screening#fullrecommendationstart [https://perma.cc/QV7L-BHWL].

The Hall Report concludes that total body skin exams in Defendants' practices were upcoded and "that providers were compelled by [Defendants'] companywide policies to conduct skin cancer screening [total body skin exams]." ECF No. 246-1 at 20. And the Rigel Report directly rebuts the Hall Report's analysis and conclusion. It refutes assumptions made by Hall's analysis of patient visits, such as that each total body skin exam was for a skin cancer screening. *See* ECF No. 246-5 at 7–8. It also takes issue with Hall's application of the Task Force guidance, the criteria that Hall used to determine if total body skin exams would be covered, and with Hall's conclusions from reviewing patient charts. *See id.* at 8–11.

According to Relator, the Rigel Report goes beyond refuting the Hall Report by offering medical opinions and discussing the appropriateness of total body skin exams under these circumstances. *See* ECF No. 245-1 at 9–10. However, the Hall Report involved multiple medical judgments and assumptions to which Rigel's medical expertise is responsive. For instance, to determine whether total body skin exams would be covered, the Hall Report did not focus solely on billing and coding—it made medical assumptions about what risk factors correspond to a high risk or history of skin cancer. *See* ECF No. 246-1 at 19 (identifying criteria used by Hall to determine which patient visits would be considered covered). What is more, Hall's broad conclusion: "that providers were compelled by [Defendants'] policies to conduct skin cancer screening [total body skin exams]," *id.* at 20, is rebutted by Rigel's opinion that providers administered such exams because they were medically appropriate, *see* ECF No. 246-5 at 10. Accordingly, Relator's Motion is denied with respect to the Rigel Report.

5

### C. The Barsky Report

Lastly, Relator moves to strike the Barsky Report because it is made up of legal conclusions and, regardless, offers new opinions that do not rebut Relator's experts. *See* ECF No. 245-1 at 4–5, 12–13. Barsky is a partner at the law firm Crowell & Moring LLP and a former Director of the Division of Technical Payment Policy at the Centers for Medicare & Medicaid Services, where he was responsible for establishing Stark Law policies. ECF No. 246-3 at 4. The Barsky Report contains numerous legal conclusions about which it is inappropriate for an expert to opine.

While courts sometimes permit regulatory experts to provide general background information about regulatory schemes, "[e]xperts generally may not testify on pure issues of law, such as the meaning of statutes or regulations." *Antrim Pharms. LLC v. Bio-Pharm, Inc.*, 950 F.3d 423, 430 (7th Cir. 2020). And that is for good reason: "Even in cases involving complex legal or regulatory schemes," it is for counsel to argue, and the court to instruct the jury, about "what the law means or how it is interpreted." *United States v. Coontz*, 810 F. App'x 201, 204 (4th Cir. 2020) (per curiam) (citation omitted). Allowing experts to submit glorified legal briefs and make legal arguments—that counsel could then rely on at summary judgment or trial— threatens to circumvent these principles.

In keeping with the above, courts have allowed regulatory experts to provide limited background information on regulatory schemes and opine on their purpose. *See, e.g.*, *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) (finding no abuse of discretion where the district court permitted expert to provide general factual background on federal securities regulation); *United States v. Duncan*, 42 F.3d 97, 101 n.3 (2d Cir. 1994) (where witness testified about "the proper functioning of the tax system and the importance of filing tax returns accurately," the witness did not "express legal conclusions" but only explained "sophisticated aspects of a regulatory system for which the witness had expertise"); *United States v. Onyenso*, 615 F. App'x

734, 738 (3d Cir. 2015) (involving testimony about the purpose of the Anti-Kickback Statute, though concluding that "in some cases that purpose can be irrelevant and unduly prejudicial"). Courts have also permitted experts to offer opinions flowing from their technical, rather than legal, expertise. *See United States v. Universal Rehab. Servs., Inc.*, No. CRIM 94-147, 1996 WL 297575, at *10 (E.D. Pa. May 31, 1996) (permitting testimony by "[insurer's] Medicare reviewer" about how Medicare reimbursement system functioned and whether documents supported billing claims"), *aff'd*, 205 F.3d 657 (3d Cir. 2000); *cf. also Sundance, Inc. v. Demonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008) (though patent lawyers may testify "as technical experts," their qualification must be based on their technical expertise)

The Barsky Report substantially exceeds those bounds. Numerous times, Barsky—a lawyer—opines on the "meaning of . . . regulations." *Antrim Pharms. LLC*, 950 F.3d at 430; *see, e.g.*, ECF No. 246-3 at 17 ("[B]ased on the language cited above [in the Stark Law regulations], analysis of FMV must consider the total compensation"); *id.* at 18 ("Nothing in CMS's language suggests that a flat fee compensation for supervision services is the *only* permissible payment methodology"); *id.* at 32 ("[It] is my understanding based upon the regulatory text that a Group Practice may utilize different methodologies to calculate the productivity bonuses paid to different physicians"). And his report reaches legal conclusions; he expressly states that he was retained to determine whether "[Defendants] comply with the [Stark] law" and opines on which Stark Law exceptions "would likely apply." ECF No. 246-3 at 5, 34. Though the Report dresses some of these opinions up with "likely" and "maybe," they are plainly legal conclusions and read more like a legal brief. *See, e.g.*, *id.* at 27–28 (based on Barsky's review of Defendants' compensation arrangements, concluding Stark Law's employment exception would apply). *Cf. Scott*, 315 F.R.D. at 48–49 (finding that rebuttal expert's opinion about whether class certification was possible "read[] more like lawyer's argument" and "overstepped his authority"); *Bilzerian*, 926 F.2d at

7

1295 (discussing exclusion of hypotheticals that "blurr[ed] the line between testimony regarding industry practice and an opinion on the legality of defendant's conduct").

Nonetheless, the Barsky Report also contains permissible opinions. For example, he discusses the general history and goal of the Stark Law regulations. *See* ECF No. 246-3 at 10. Barsky also provides factual opinions that seemingly flow from his policy experience. For instance, he states "that it is common for MSOs to provide administrative and billing services to group practices" and that "in [his] experience, certain physician practices choose to protect compensation arrangements from implicating the [Stark] Law by excluding from such compensation any revenue from non-personally performed DHS." *Id.* at 7, 31–32.

Nonetheless, given the nearly 40-page report at issue, it is unmanageable for this Court to go sentence-by-sentence and separate out the allowable opinions from the rest. And because exclusion is an extreme remedy, as discussed above, this Court will permit Defendants to revise the Barsky Report in a manner consistent with this Opinion. Relator may then move to strike the Report or for the opportunity to rebut it, insofar as the Barsky Report is not used "solely to contradict or rebut" his experts. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).

In light of the foregoing, Relator's Motion is granted in part and denied in part in the manner discussed above.

## II.   CONCLUSION

For the foregoing reasons, the Court will **GRANT** in part and **DENY** in part Relator's Motion to Strike (ECF No. 245). An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**